# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY MCLAUGHLIN, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 1:17-CV-255<br>)<br>) Judge Nora Barry Fischer |
| v. | )<br>) |
| SENECA RESOURCES CORPORATION, | ) ELECTRONICALLY FILED<br>) |
| Defendant. | )<br>) |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Filed on behalf of Defendant:

Seneca Resources Corporation

Counsel for this party:

Christian C. Antkowiak *(PA 209231)*
christian.antkowiak@bipc.com
Curtis M. Schaffner *(PA 311274)*
curtis.schaffner@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Phone:   412-562-8800
Fax:   412-562-1041

## IV.    LEGAL STANDARD

A.    <u>The Legal Standard for a Rule 12(b)(6) Motion to Dismiss</u>.

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual averments that, when accepted as true, state a claim to relief that is plausible on its face. *Sloane v. Gulf Interstate Field Servs., Inc.*, No. CV 15-1208, 2016 WL 878118, at *2 (W.D. Pa. Mar. 8, 2016) (J. Fischer). However, "though a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotations omitted). If the factual averments, when separated from the legal elements of a claim, do not set forth a plausible claim for relief, the complaint is legally insufficient and should be dismissed. *Id.*

B.    <u>The Legal Standard for a Rule 12(e) Motion for a More Definite Statement</u>.

Federal Rule of Civil Procedure 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." While Rule 12(e) motions are generally disfavored because of the liberal pleading standards under Federal Rule of Civil Procedure 8, a sister court out of the District of New Jersey has explained as follows:

> [a] plaintiff's compliance with the 'short and plain statement' standard of Rule 8(a)(2), and success in stating a claim upon which relief may be granted under Rule 12(b)(6), does not insulate its pleading from a well-grounded motion for a more definite statement under Rule 12(e). In fact, Rule 12(e)'s *raison d'être* is to require greater specificity than what is ordinarily required under Rule 8(a)(2) in that narrow class of cases where the want of specificity precludes the defendant from properly framing an

11012-RWZ, 2009 WL 94117053, at *1 (D. Mass. Nov. 20, 2009).  In dismissing the collective action claims, the *Landry* court explained that the complaint set forth "general factual allegations which target the administrative and professional exemption and state the bare legal elements of an FLSA claim.  The collective action allegations, and the class allegations, parrot the requirements of Fed.R.Civ.P. 23 and add no factual color to the complaint."  *Id.* (internal citations omitted).  As threadbare recitals of the elements of a cause of action and legal conclusions are not entitled to an assumption of truth, the *Landry* court dismissed the class and collective allegations pursuant to Fed. R. Civ. P. 12(b)(6).

District courts in both *Creech v. Holiday CVS, LLC*, 11-46-BAJ-DLD, 2012 WL 4483384 (M.D. La. Sept. 28, 2012) and *St. Croix v. Genentech, Inc.*, No. 8:12-cv-891-T-33EAJ, 2012 WL 2376668 (M.D. Fla. June 22, 2012) reached similar conclusions.  In *Creech*, a district court found that the plaintiff's individualized claims were adequately pled, but that the collective action allegations lacked the level of factual specificity required to survive a Rule 12(b)(6) motion, explaining as follows:

> [a]lthough the [c]omplaint provides certain details about the duties of the [p]laintiff as a shift supervisor, it fails to provide any such description or details about the other proposed parties who are alleged to be "similarly situated."  Plaintiff only claims the other class members performed the same or similar job duties in that they "provided customer services" for the Defendants.  This is not descriptive enough to give rise to a plausible right to relief.

2012 WL 4483384, at *3.  The above statements were reiterated by the court in *St. Croix*.  *See* 2012 WL 2376668 at *3 (granting motion to dismiss collective action allegations because there was "no description of the job duties (or even the job titles) of the alleged similarly situated employees" nor were "there any allegations concerning the similarly situated employees' pay provisions.").

Here, Plaintiff alleges that he was a "solids control technician" and was paid a day rate.

6

[ECF No. 8 at ¶¶ 8, 12]. As an independent contractor for Smith Management, Plaintiff claims that he "regularly worked" more than 40 hours in a workweek on well sites owned or operated by Defendant from May 2015 through November of 2016, but was never paid overtime compensation in violation of the FLSA and PMWA. [*Id.* at ¶¶ 3, 11]. In addition to his individualized claims, Plaintiff attempts to bring this lawsuit on behalf of a purported group of similarly situated employees, which Plaintiff defines as follows: "all current and former oilfield workers that worked for or on behalf of [Defendant] who were classified as independent contractors and paid a day rate during the last three (3) years." [*Id.* at ¶ 15].

While the factual allegations regarding Plaintiff's job title, job duties, hours worked, and rate of pay may be enough to support Plaintiff's individualized claim for relief for purposes of Rule 12(b)(6), there are no <u>*actual factual allegations*</u> in the Amended Complaint to support a finding that the proposed class of additional plaintiffs are "similarly situated" to Plaintiff – *let alone that Plaintiff has firsthand knowledge of the relevant facts and circumstances sufficient to make such allegations*. Instead, and as with the proposed classes discussed in *Landry*, *Creech*, and *St. Croix*, Plaintiff simply sets forth generic, cookie cutter statements that do nothing more than parrot the elements necessary for Plaintiff to maintain a collective or class action. *Moreover, Plaintiff generalizes without first establishing a foundation*.

By way of example, Plaintiff purportedly sets forth the factual averments in support of his collective and class action claims in the section of the Amended Complaint titled "Facts". [*See* ECF No. 8, at ¶¶ 24-48]. In the beginning of the purported "Facts" section, Plaintiff makes the following legal conclusions and cookie cutter allegations:

> [m]any of the[] individuals worked for Defendant on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar

7

> illegal pay practices for similar work. These so-called independent contractors were paid them [sic] a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) without any overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

[*Id.* at ¶ 25]. In support of the above legal conclusions, Plaintiff reiterates his own job title and job duties as a "solids control technician" [*id.* at ¶¶ 26-27], but fails to set forth any specifics regarding the other "oilfield workers." Instead, Plaintiff makes the following generalized statements:

- Defendant did not require any substantial investment by Plaintiff or the Putative Class Members. [*Id.* at ¶¶ 30, 35].

- Defendant determined Plaintiff and the Putative Class Members opportunity for profit and loss. [*Id.* at ¶¶ 31, 41].

- The job functions of Plaintiff and the Putative Class required little to no official training or specialized skillset, much less a college education or other advanced degree. [*Id.* at ¶¶ 31, 42].

- Defendant and its clients controlled all the significant or meaningful aspects of the job duties performed by Plaintiff and the Putative Class Members. [*Id.* at ¶¶ 32, 34, 45].

- Defendant and its clients determined the hours and locations Plaintiff and the Putative Class Members worked, rates of pay, and work schedules. [*Id.* at ¶¶ 33, 40, 44].

- Plaintiff and the Putative Class Members utilized equipment provided by Defendant and/or its clients to perform their job duties. [*Id.* at ¶¶ 36, 37].

- Plaintiff and Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance. [*Id.* at ¶ 38].

- Plaintiff and the Putative Class Members were economically dependent on Defendant during their employment. [*Id.* at ¶ 39].

- Plaintiff and the Putative Class Members did not have any supervisory or management duties. [*Id.* at ¶ 43].

- Plaintiff and the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice. [*Id.* at ¶ 46].

The above allegations are not averments of specific fact, nor are they conclusions supported by averments of specific fact elsewhere in the Complaint. To the contrary, there are no actual *factual* allegations setting forth the work schedules, job titles, job duties, operating expenses, or rates of pay of these other "oilfield workers." There is also no explanation as to how the characteristics of these other "oilfield workers" are, in any way, similarly situated to Plaintiff, except for the legal conclusion that they were all subject to some illegal pay practice – or, for that matter, how Plaintiff has firsthand knowledge concerning any of the above issues. As explained by the *Creech* court, such generalizations are "not descriptive enough to give rise to a plausible right to relief."

Moreover, and similar to the situation in *Landry*, the above allegations are nothing more than generic references, with no factual color, to the elements required to establish an employer-employee relationship under the economic realities test. *See e.g.*, *Razak v. Uber Techs., Inc.*, No. CV 16-573, 2016 WL 5874822, at *4 (E.D. Pa. Oct. 7, 2016) (in determining whether an employer-employee or independent contractor relationship exists, courts look to (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business). As recognized by this Honorable Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Sloane*, 2016 WL 878118, at *2 (J. Fischer).

In sum, Plaintiff is simply setting forth the elements necessary to prove a misclassification claim through generic statements and legal conclusions. The generalized, cookie cutter nature of these allegations is evident by the fact that they could be copied and pasted into other cases without changing the actual language. Indeed, Plaintiff's counsel has done just that, filing nearly identical complaints in other lawsuits. [*See e.g.*, *Williford v. Rice Energy, Inc. Complaint*, 2:17-cv-00945-MPK (W.D. Pa. 2017) attached hereto as Exhibit "C"].[4] As there are no specific factual averments pertaining to the purported class of other "oilfield workers" for whom Plaintiff claims to be similarly situated, the collective and class action allegations are legally insufficient and should be dismissed pursuant to Rule 12(b)(6).

B.   <u>In the Alternative, Plaintiff should be Ordered to More Definitively Define the Class of Plaintiffs he Purports to Represent Pursuant to Fed. R. Civ. P. 12(e)</u>.

District courts within this Circuit will grant a defendant's Rule 12(e) motion "when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself.'" *Clark*, 213 F.R.D. at 232-33 (internal quotations omitted). In this regard, Rule 12(e) motions are generally granted where:

> the allegations of a complaint are not sufficiently specific to enable a defendant to determine the propriety of interposing in his answer a waivable defense or where, in the absence of certain information peculiarly within the knowledge of the plaintiff, <u>the defendant cannot, in good faith, answer the complaint with a general denial</u>.

*Id.* at 233 (internal citations omitted) (emphasis added). "Motions for a more definite statement are also an appropriate vehicle to pare down 'shotgun' pleadings." *Id.* As explained by the district court in *Clark*, "[b]y requiring more definiteness, issues may be joined on particular claims, discrete defenses can be interposed in discrete fashion, and the litigation may be made

---

[4] The United States Court of Appeals for the Third Circuit has directed that a court may consider matters of public record on a motion to dismiss, which include case decisions, reports of administrative bodies, and decisions of government agencies. *Pension Ben. Guar. Corp.*, 998 F.2d at 1197. Therefore, this Court can properly consider the attached at this stage in the proceedings.

10

more manageable, through more controlled discovery, to the benefit of the litigants and the district court alike." *Id.*

In FLSA actions where a complaint fails to adequately define the class of employees for whom the Plaintiff purports to represent, courts have granted Rule 12(e) motions for the reasons set forth in *Clark* above.  For example, in *Woodard v. FedEx Freight East, Inc.*, a plaintiff alleged that a defendant misclassified him as exempt from overtime pay in violation of the FLSA and the PMWA.  250 F.R.D. 178, 179 (M.D. Pa. 2008).  Despite being a shift manager at a single facility in Pennsylvania, the plaintiff in *Woodard* purported to bring the lawsuit on behalf of "[a]ll persons who are or were formerly employed by [d]efendant in the United States . . . who were not paid for hours that they actually worked as well as for overtime compensation . . . ." *Id.* at 181.  The defendant filed, *inter alia*, a Rule 12(e) motion for a more definite statement, alleging that the proposed collective group was overly broad and ill defined, preventing the defendant from sufficiently admitting or denying the pleadings.  *Id.* at 192.  The plaintiff argued that the defendant's motion was premature because discovery was necessary to further define the class.  *Id.*

The *Woodard* court agreed with the defendant, finding that a proposed class of "all employees who were denied overtime compensation" was overly broad and afforded no basis for the defendant to compose a responsive pleading.  *Id.*  The court intimated that, "[a]t best [defendant] is left to guess as to which employees it failed to pay overtime in violation of the FLSA." *Id.*  The *Woodard* court outright rejected the plaintiff's contention that discovery was necessary, explaining that although the plaintiff may not know the particular job titles at issue, the plaintiff had enough knowledge at his disposal to more narrowly describe the universe of the class he is purports to represent.  *Id.*  The *Woodard* court, like in the *Clark* case cited above, also

11

reiterated that "by filing a more definite and precise statement, the proposed collective group will be 'sufficiently defined and manageable from the outset.'" *Id.* Based upon the above findings, the *Woodard* court granted the defendant's Rule 12(e) motion and ordered the plaintiff to more narrowly define the class. Other courts have similarly granted Rule 12(e) motions where a plaintiff fails to adequately define "what people make up the collective action group." *See e.g.*, *Osorio v. Tran*, No. CV 08-4007HRL, 2008 WL 4963064 (N.D. Cal. Nov. 19, 2008); *Clark*, 213 F.R.D. at 234.

Akin to the plaintiff in *Woodard*, Plaintiff here had one job title, solids control technician, and worked through one third-party vendor, Smith Management. [ECF No. 8 at ¶ 2; Ex. A]. Nevertheless, Plaintiff is attempting to represent "all oilfield workers" who performed services for Defendant as an independent contractor, whether directly or through a third party. [ECF No. 8 at ¶ 15]. While Plaintiff is not intending to represent "all employees" as the plaintiff was in *Woodard*, use of the phrase "all oilfield workers" has the same practical effect. As there is no job title known as "oilfield worker", the phrase potentially encompasses any independent contractor who has ever performed any type of work on any well site operated by Defendant and was not paid overtime – regardless of whether the worker was provided by Smith Management, or someone else. In essence, "all oilfield workers" in this lawsuit means "all workers."

Plaintiff then incorporates the class definition of all "oilfield workers" throughout the allegations of the Amended Complaint, making generalized statements about the "oilfield workers". [*See* ECF No. 8 at ¶¶ 31-48]. Over the past three years, Defendant has contracted for services with potentially hundreds of third party vendors to provide a wide range of services at various stages of the drilling and completions process. The length of time spent working at the job site; the pay structure; the schedule and hours worked; the equipment, materials, and tools

used; the training and educational background; and the services provided necessarily varies from vendor to vendor and position to position. As Defendant cannot tell what personnel all "oilfield workers" refers to, Defendant cannot, in good faith, admit or deny the allegations regarding the broad putative class members.

By way of example only, other solids control technicians may work similar schedules and hours and receive similar pay as alleged in Paragraphs 40 and 46 of the Amended Complaint, but the various drivers, security guards, mud men, and flowback operators who also work on the same well site as independent contractors do not. Thus, Defendant can neither admit nor generally deny the allegations in Paragraphs 40 or 46, as written. Likewise, solids control technicians may perform similar job duties as solids control technicians from other third party vendors, may possess no supervisory authority, and may not have any official training as alleged in Paragraphs 42, 43 and 45 of the Amended Complaint. However, other potential "oilfield workers" differ significantly. For example, company men or superintendents paid a day rate as independent contractors oversee an entire rig or multiple rigs and often undergo substantial training and/or possess college degrees. Therefore, it is nearly impossible for Defendant to admit or deny the allegations set forth in Paragraphs 31 through 48 of the Amended Complaint in the context of all "oilfield workers" to have ever worked for Defendant as an independent contractor within the past three years and received a day rate. *See e.g.*, *Clark*, 213 F.R.D. at 234 (granting Rule 12(e) motion because without more definitive information, the defendant "can neither admit, nor in good faith deny, the allegations."). This is particularly true considering that some of the allegations may not even pertain to Defendant, but may pertain to the policies, processes, or procedures of third party vendors. [*See* ECF No. 8 at ¶¶ 32-34, 36, 37, 44 (making

13

generalized allegations about Defendant *and/or its clients*)]. Defendant is similarly prejudiced in its ability to plead, in good faith, all applicable defenses to the claims asserted by Plaintiff.

In sum, Defendant cannot, in good faith, answer the allegations pertaining to "all oilfield workers" in the Amended Complaint because "all oilfield workers" is overly broad and ill defined—a proper basis for granting a Rule 12(e) motion. *See e.g.*, *Clark*, 213 F.R.D. at 232-33. Moreover, granting the Rule 12(e) motion will further judicial economy and streamline discovery because "[b]y requiring more definiteness, issues may be joined on particular claims, discrete defenses can be interposed in discrete fashion, and the litigation may be made more manageable, through more controlled discovery, to the benefit of the litigants and the district court alike." *Id.* For these reasons, Plaintiff should be required, at a minimum, to more definitely plead his collective and class action allegations pursuant to FED. R. CIV. P. 12(e).

## VI.     CONCLUSION

This Honorable Court should either dismiss Plaintiff's collective and class action allegations for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative, require Plaintiff to more definitely plead his collective and class action allegations pursuant to FED. R. CIV. P. 12(e).

Dated:  November 20, 2017                    Respectfully submitted,

*/s/ Christian C. Antkowiak*
Christian C. Antkowiak *(PA 209231)*
christian.antkowiak@bipc.com
Curtis M. Schaffner *(PA 311274)*
curtis.schaffner@bipc.com
Buchanan Ingersoll & Rooney PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219

14

## CERTIFICATE OF SERVICE

I hereby certify that on the <u>20th</u> day of <u>November</u>, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following counsel for Plaintiff:

Joshua P. Geist
Goodrich & Geist, P.C.
3634 California Ave
Pittsburgh, PA 15212
josh@goodrichandgeist.com

Michael A. Josephson
Andrew W. Dunlap
Josephson Dunlap Law Firm
11 Greenway Plaza, Suite 3050
Houston, TX 77046
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
Bruckner Burch, P.L.L.C.
8 Greenway Plaza, Suite 1500
Houston, TX 77046
rburch@brucknerburch.com

/s/ Christian Antkowiak
Christian Antkowiak